UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE GECEWICZ,

       Plaintiff,                               Case No. 09-14013
                                                     Honorable David M. Lawson

v.

HENRY FORD MACOMB HOSPITAL CORP.,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING OTHER MOTIONS, AND DISMISSING CASE

The plaintiff filed a complaint alleging three causes of action that arose from her termination from employment by defendant Henry Ford Macomb Hospital Corporation (Ford Hospital) on June 8, 2008. Before the Court is the defendant's motion for summary judgment, which attacks all of the plaintiff's claims. The plaintiff's response does not address causes of action other than her claim brought under the Americans with Disabilities Act (ADA). The Court heard oral argument on the motion on December 21, 2010, at which the plaintiff acknowledged that she was not pursuing any claims other than liability based on a violation of the ADA on the theory that the defendant regarded the plaintiff as having a disability. The Court now finds that the facts offered by the plaintiff do not establish all the elements of a claim under the ADA, and she has abandoned her other claims. Therefore, the Court will grant the defendant's motion for summary judgment and dismiss the complaint. The defendant has filed other motions to dismiss based on alleged discovery abuses. Those motions will be denied as moot.

I.

The plaintiff was hired as an at-will employee by St. Joseph Hospital in Macomb County, Michigan in April of 1998. St. Joseph Hospital apparently was acquired sometime thereafter by the Henry Ford Hospital System, and the plaintiff continued to work for the new entity. She first worked in the environmental services department but was transferred later to the sterile processing department, where she was employed as a Sterile Processing Technician until she was terminated, allegedly for excessive absence from work. As a Sterile Processing Technician, the plaintiff was responsible for sterilizing surgical instruments and preparing and delivering surgical trays and carts. Her supervisor was Carolyn Rogers, the clinical manager of the Sterile Processing department, who assigned the plaintiff to the midnight shift.

The defendant maintained a policy allowing employees to take a limited amount of time off work for vacations, illnesses, and personal reasons, provided prior arrangements were made with a supervisor. The defendant also maintained and enforced an attendance policy that discouraged — and eventually penalized — unscheduled time off work.

As a full-time employee, the plaintiff accrued the equivalent of 30 days of combined time off per year. Under the attendance policy, a scheduled absence was defined as one that was requested and approved in accordance with the department's policy; an unscheduled absence was one that had not been approved in advance. If an employee did not show up to work and call within the amount of time designated by the department guidelines, the employee accrued a "No Call/No Show." Any unscheduled absence was designated an "occurrence" in the defendant's guidelines. A no call/no show was counted as three occurrences. For a full time employee, the defendant tolerated up to eight unscheduled absences in a rolling twelve-month period. However, after seven

occurrences, the employee received a written warning. The policy stated that an employee could be terminated once she reached nine occurrences.

The record in this case discloses that the plaintiff was absent from work on a number of occasions over the years of her employment with the defendant (or its predecessor) because she needed a variety of surgical procedures. For instance, the plaintiff had a hysterectomy, a birch procedure to correct a bladder tilt, a tibial osteotomy in 1998, knee surgeries on both knees sometime in 1994 and 2006; gastric bypass surgery around 2004; bowel obstruction surgery around 2007-2008; and bilateral carpal tunnel surgery in 2007. The plaintiff further alleges that she was diagnosed with an incisional hernia in 2008 prior to her termination. Until the present instance, she was not disciplined for excessive absences.

The plaintiff obtained permission for these work absences over the years from Carolyn Rogers, and for some of the periods the defendant approved leave under the Family and Medical Leave Act (FMLA). Rogers was aware of the plaintiff's surgical history. The parties do not dispute that Rogers considered the plaintiff a good worker when she was present at work. But the plaintiff testified that she thought Rogers viewed her multiple surgeries as some sort of disability. The plaintiff testified "that Carolyn thought [she] had is . . . too many surgeries." Def.'s Mot. Summ. J., Exhibit 3, Gecewicz dep. at 203. Rogers allegedly told the plaintiff that she "needs to stop having so many surgeries" and that she needed "to take better care of herself" because her "attendance [was] getting jeopardized." *Id.* at 55. The plaintiff contends that Rogers made comments such as "You've had a lot of surgeries for one person" and "That's a very risky surgery" in reference to the gastric bypass procedure. *Id.* at 192. These comments, however, were made in 2002 and 2003.

The plaintiff's current difficulties began in 2007 when she again started accruing unscheduled absences. In February 2008, she was issued a written warning that she had accrued seven occurrences and would be considered for release from employment at nine occurrences. No one disputes that the warning complied with the defendant's attendance policy or contends that it was issued inappropriately.

On February 26, 2008, the plaintiff was issued a written warning that she had accrued seven occurrences. On March 28, 2008 the plaintiff met with Carolyn Rogers for a performance evaluation. Rogers discussed with the plaintiff her need to improve her attendance as to tardiness and absences. Despite this discussion, the plaintiff accrued another unscheduled absence less than two weeks later on April 10, 2008. Apparently, some of her prior occurrences had fallen outside the rolling twelve-month period since her February warning, because she was issued another written warning in May of 2008 that she had accrued seven occurrences. The plaintiff's absences were medically related. Nonetheless, neither side disputes that the plaintiff had accrued seven occurrences as of May 1, 2008.

In May 2008, the plaintiff requested time off from Carolyn Rogers to attend her son's wedding. She was granted time off for May 8, 9, and 12. These absences did not result in an occurrence because they were approved ahead of time.

But on May 22, 2008, the plaintiff failed to show up to work. She was to begin her shift at 10:00 p.m. Rogers testified that the plaintiff called that evening at 10:00 p.m. to say she would be an hour late, but the plaintiff never reported to work that day. The failure to come to work on May 22 resulted in a "no call/no show" for that date, which counted for three occurrences under the

attendance policy. The plaintiff's occurrence tally then was ten, which subjected her to termination.

The plaintiff raises a factual issue about this last event. She contends that she had obtained permission to miss work on May 22, thereby avoiding the no call/no show designation, and her absence should have counted as only one occurrence, totaling eight for the period. The plaintiff testified that she had followed the procedure for requesting time off by filling out an old St. Joseph Hospital form, which Carolyn Rogers would sign if the time off was approved and post it on the door in the employees' locker room. The plaintiff contends that she received the approved form and kept it in her locker. She no longer has it, she explains, because she was not allowed to retrieve her belongings for several days after she was fired, and the form was not among her things when the locker's contents were mailed to her.

There is confusion on this point in the record, however. The plaintiff admits to calling in that night but states that her purpose was to apologize to her co-worker, Holly, for not coming in to work. The plaintiff also informed Holly that she had time off to cover this absence and to "relay to Vaughn so he doesn't expect [her] to come in." Pl.'s Mot., Ex. A, Gecewicz dep. at 66-67. In addition, however, the plaintiff testified later in her deposition that she may not have requested an approved absence for May 22:

> Q: Are you contending that you requested the 22nd though?
> A: I don't recall. I don't believe I asked for the 22nd of May off. It is not on the schedule nor the calendar page that you have given me.

Def.'s Mot. Summ. J., Ex. 3, Gecewicz dep. at 211.

Aside from this occurrence, the defendant alleges that the plaintiff also missed work on June 9 and 10, 2008. However, the plaintiff testified that her last day of work was June 6, 2008 pending a meeting with A.J. Evans, a human resources officer, and Carolyn Rogers.

After the plaintiff's no show/no call on May 22, 2008, Rogers called Evans and explained that the plaintiff was over the nine-occurrence limit. They both decided to discharge her together, but they could not mutually agree on a time to meet. Eventually, one of them called the plaintiff to set up a formal meeting. The plaintiff says she was not aware of the reason for this meeting, which eventually occurred on June 20, 2008, where the plaintiff was discharged due to excessive number of unscheduled absences.

At the meeting, the plaintiff did not dispute the number of absences she had. She testified that she could not remember the details of the meeting because she was in shock over the announcement of her firing. At the end of this meeting, the plaintiff was not allowed to retrieve her belongings from her locker. A month later, when the plaintiff requested her belongings, Carolyn Rogers emptied out the plaintiff's locker and sent the contents to A.J. Evans, who then mailed the contents to the plaintiff. The plaintiff testified that the critical approval form for the May 22, 2008 absence was not among the items she received.

The plaintiff filed a Charge of Discrimination with the EEOC in March of 2009, alleging that her termination violated the Americans with Disabilities Act of 1990. The plaintiff testified that she believes the disability "that Carolyn thought [she] had is . . . too many surgeries." Def.'s Mot. Summ. J., Ex. 3, Gecewicz dep. at 203. The plaintiff believes that she was terminated because she took too much time off due to her medical conditions.

The defendant does not dispute that the plaintiff was able to perform her work. At the plaintiff's last performance evaluation, Carolyn Rogers found that the plaintiff met all her expectations and fulfilled all her responsibilities. They discussed her long term goals, and Rogers encouraged her to become certified and a nurse. The plaintiff also was encouraged to improve her attendance and tardiness. Rogers also testified that "when [plaintiff] was there, she was a good worker." Pl.'s Resp., Ex. B, Rogers Dep., at 44.

The plaintiff filed the present complaint against Ford Hospital on October 9, 2009, asserting a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* The complaint alleges other claims as well, but, as noted earlier, at oral argument on the motion for summary judgment the plaintiff withdrew all theories of liability except her ADA "regarded as" claim.

On June 11, 2010, the defendant filed a motion to dismiss that alleged discovery violations. The magistrate judge recommended the motion be denied. The defendant filed objections to the magistrate judge's report, and the motion remains pending. On December 16, 2010, the defendant filed another motion to dismiss or to strike the plaintiff's pretrial disclosures, asserting that the plaintiff filed its disclosures late under Federal Rule of Civil Procedure 26(a)(3).

II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the non moving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Ibid.* (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted).

Congress enacted the Americans with Disabilities Act in an effort to "eliminate[] discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act prohibits qualifying employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . hiring, advancement, or discharge, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). If an employee suffers discrimination because he or she

has a disability as defined by the ADA, has a record of having such a disability, or is regarded by his or her employer as having such a disability, 42 U.S.C. § 12102(1), the employee may bring an action seeking various remedies, including damages, provided that the employee first files a timely complaint with the EEOC. 42 U.S.C. §§ 12117, 2000e-5(f)(1). *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).

When an employer moves for summary judgment on an ADA claim, an employee must come forward with evidence which demonstrates genuine material fact issues on each of the following elements: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)); *see also Williams v. London Utility Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (citing *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)).

The ADA defines a "disability" as a physical impairment that "substantially limits one or more major life activities. . . ." 42 U.S.C. § 12102(1)(A). The plaintiff has made clear that she is not proceeding on the theory that she actually is disabled. That concession is not fatal to her claim, because the ADA also prohibits discrimination against those whom the employer believes are disabled, even if they are not actually disabled. 42 U.S.C. § 12102(1)(C) ("The term 'disability' means, with respect to an individual being regarded as having such an impairment . . . ."). The Supreme Court explained in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999):

> There are two apparent ways in which individuals may fall within this statutory definition [in section 12102(1)(C)]: (1) a covered entity mistakenly believes that a

person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual — it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton*, 527 U.S. at 489. When assessing such claims, the "Court does not even focus on the disability, but on the perception of the employer regarding the perceived disability. . . . [U]nder the 'regarded as' prong, the Court must determine whether Defendants' [sic] perceived Plaintiff's clients as being disabled and discriminated against them on that basis." *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 340 (6th Cir. 2002).

After *Sutton* was decided, Congress augmented the definition of disability in the ADA in 2009, especially focusing on "regarded as" claims. One of the new subsections reads:

> For purposes of paragraph (1)(C):
> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3) (2009). But the plaintiff was fired in 2008, and the Sixth Circuit has held that the amendatory language is not retroactive and "does not apply to pre-amendment conduct." *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009).

Under the previous version of the statute, applicable here, the plaintiff must offer evidence that "she was 'regarded as having . . . [an] impairment that substantially limits' her major life activity of working in a broad class of jobs." *Ibid.* (quoting 42 U.S.C. § 12102(2)(C) (2006)); *see*

-11-

*also Sutton*, 527 U.S. at 491 ( noting that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs" or "'a broad range of jobs in various classes'"). It is the plaintiff's belief that the defendant, in the person of Carolyn Rogers, thought the plaintiff had "too many surgeries," meaning, presumably, that the plaintiff was prone to a variety of illnesses that required surgical intervention and interfered with her coming to work. It appears from the plaintiff's characterization that she grounds her claim of disability not on a single condition, but on a variety of discrete ailments that each required surgery, and because of these surgical treatments and the attendant recuperation period, the defendant perceived that the plaintiff's general condition interfered with her ability to work. That is a difficult proposition to prove.

Taking the evidence in the light most favorable to the plaintiff, the Court will presume that the plaintiff obtained permission to miss work on May 22, 2008; therefore, there was no actual justification to fire her for accumulating nine or more occurrences. It is true that "evidence that the company created a pretextual reason for [the plaintiff's] firing may tend to prove that it regarded [the plaintiff] as a disabled employee." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001). But a finding that the purported reason for firing is a pretext alone is not enough to conclude that there is some evidence that the defendant regarded the plaintiff as disabled.

In *Moorer v. Baptist Memorial Health Care System,* 398 F.3d 469 (6th Cir. 2005), the court offered the following gloss on *Ross*'s pronouncement:

> In *Ross*[], this Court recognized that "[p]roving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA" and that this question is "embedded almost entirely in the employer's subjective state of mind." This task is "extraordinarily difficult" because "it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such

> considerations." The Court therefore held that "where there is *substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual*, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry" — i.e., by a trier of fact — "into whether the employer engaged in unlawful discrimination is especially acute." Therefore, "evidence that the company created a pretextual reason for [the plaintiff's] firing may tend to prove that it regarded [the plaintiff] as a disabled employee." *Id.* at 708.

*Id.* at 481 (emphasis added; citations omitted).

In this case, the only evidence offered by the plaintiff to establish that the plaintiff's serial surgeries played any role in the decision to fire her was the remarks by Carolyn Rogers that the plaintiff needed to "stop having so many surgeries" and had to take better care of herself because her "attendance [was] getting jeopardized." Def.'s Mot. Summ. J., Ex. 3, Gecewicz dep. at 55. But those remarks occurred years before the plaintiff was fired. There is nothing else in the record that suggests any concern or doubt by the employer that the plaintiff could not do her job. In fact, all the evidence is to the contrary; the plaintiff's supervisor regarded her as a good employee when she was at work, and she received favorable performance reviews since the 2002-2003 period.

The evidence in *Ross* and *Moorer* is quite different. In *Ross*, the plaintiff was a food merchandiser who traveled and frequently had to lift cases of frozen food. He had a history of several back injuries requiring time off work, but his doctor cleared him to do "regular" work. There was extensive evidence that Ross's supervisor addressed his "back thing" on a performance evaluation, and he was surveilled while on disability leave. The record contained a memo by a supervisor addressing concerns that the plaintiff's injuries all occurred while doing "normal jobs" for the company. After another performance review, the plaintiff's goals were tripled and he was denied a bonus. This evidence, coupled with the flimsy support for the employer's argument that Ross was fired for poor performance, convinced the court that a fact issue existed on whether the

plaintiff was "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities." *Ross*, 237 F.3d at 708 (quoting 29 C.F.R. pt. 1630, App. § 1630.2( l )).

In *Moorer*, there was abundant evidence that the employer considered Moorer to be an alcoholic and attributed his alcoholism — falsely — to performance issues that raised substantial concerns. Moorer was a hospital executive who had mixed reviews on performance evaluatons. His supervisor saw him at a meeting one day where he appeared flush, seemed tired, and may have had an odor of alcohol about him. The supervisor recommended that Moorer take an extended leave of absence and seek treatment for alcoholism even before Moorer had a medical evaluation, and the supervisor told him that his alcoholism was the source of his performance problems. There was evidence that the defendant thereafter fabricated a reason to get rid of him.

There is no such evidence in this case. There is nothing to suggest that the defendant harbored a concern that the transient conditions that required surgeries in the past might recur, or that the plaintiff might encounter a new ailment that might require her to take time off. There is no evidence at all that the defendant was concerned that the plaintiff's "disability" interfered with her ability to do her job as a Sterile Processing Technician. Except for attendance issues, her performance reviews were generally good.

Moreover, Rogers's remarks, fairly read, do not translate into a concern over the plaintiff's ability to work, but rather her ability to come to work. That is no small distinction. The Sixth Circuit has held that an employee is not considered qualified under the ADA if she is unable to meet the requirements for attendance. *See Brenneman v. MedCentral Health Sys.,* 366 F.3d 412, 419 (6th Cir. 2004) (holding that the employee was not "otherwise qualified" for his position of pharmacy technician, and thus failed to establish prima facie ADA case, where his absenteeism would have

been excessive even if he had been granted medical leave for his allegedly diabetes-related absences.); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.").

The Court must conclude, therefore, that the plaintiff has not offered evidence that creates a genuine issue of fact on whether the defendant regarded the plaintiff as disabled. Absent such proof, the plaintiff will not be able to establish an essential element of her claim under the ADA. The defendant, therefore, is entitled to judgment in its favor on that claim as a matter of law.

III.

The Court finds that summary judgment must be granted on the plaintiff's claim under the Americans with Disabilities Act. The plaintiff has abandoned or withdrawn her other claims. The defendant also has moved to dismiss because the plaintiff failed to cooperate in discovery. The magistrate judge found that contention to be meritless, and the Court agrees. The question is moot in any event, as is the defendant's latest motion to strike on of the plaintiff's filings for failure to file timely witness and exhibit disclosures under Federal Rule of Civil Procedure 26(a)(3).

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt #35] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the defendant's motions to dismiss and to strike [dkt # 21, 49] are **DENIED as moot**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   December 28, 2010

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 28, 2010.
>
>                                            s/Deborah R. Tofil
>                                            DEBORAH R. TOFIL